UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MAKO B.,

              Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

Case No. 2:18-CV-01458-TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of Defendant's denial of her applications for disability insurance and supplemental security income benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. For the reasons set forth below, the undersigned agrees that the ALJ erred and the ALJ's decision is reversed and remanded for an award of benefits.

I.     ISSUES FOR REVIEW

1. Did the ALJ err in evaluating the medical opinion evidence?
2. Did the ALJ err in evaluating Plaintiff's subjective allegations?
3. Did the ALJ err in assessing Plaintiff's residual functional capacity ("RFC")?

II.     FACTUAL AND PROCEDURAL HISTORY

On March 28, 2013, Plaintiff filed applications for disability insurance benefits and supplementary security income. AR 14, 230-38, 239-49. In both applications, Plaintiff alleged a disability onset date of February 28, 2009. *Id.* Plaintiff's applications were denied upon initial

administrative review and on reconsideration. AR 144-47, 151-55, 156-64. The first hearing was held before Administrative Law Judge ("ALJ") Kimberly Boyce on April 9, 2014. AR 34-63, 717-46. In a decision dated, June 24, 2014, the ALJ found that Plaintiff was not disabled. AR 11-27, 665-81. The Social Security Appeals Council denied Plaintiff's request for review on October 2, 2015. AR 1-4, 688-91.

Plaintiff filed a complaint with this Court; on October 18, 2016, the Court reversed the ALJ's decision and remanded for further administrative proceedings. AR 695, 696-710.

On July 25, 2017, ALJ Boyce held a new hearing, AR 634-64, and determined that Plaintiff was not disabled. AR 610-26. Plaintiff appealed to this Court and seeks an order remanding this case either for further administrative proceedings or an award of benefits. Dkt. 10, p. 18.

## III. STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S.Ct. 1148, 1154 (2019). This requires "more than a mere scintilla" of evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

## IV. DISCUSSION

The Commissioner uses a five-step sequential evaluation process to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The ALJ assesses the claimant's RFC to determine, at step four, whether the plaintiff can perform past relevant work, and if necessary, at step five to determine whether the plaintiff can adjust to other work. *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). The ALJ has the burden of proof at step five to show that a significant number of jobs that the claimant can perform exist in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(e), 416.920(e).

In this case, the ALJ found that Plaintiff had the following serious medical conditions: Diabetes mellitus, obesity, palmoplantar keratoderma, left ankle degenerative joint disease based on an old fracture, and depression. AR 615. The ALJ found that Plaintiff could not perform her previous work, but determined there were sedentary occupations that Plaintiff would be able to perform; therefore the ALJ determined at step 5 that Plaintiff was not disabled. AR 618, 625.

### A. Whether the ALJ erred in evaluating the medical opinion evidence

Plaintiff alleges that the ALJ erred in evaluating the opinions of examining physicians William Alto, M.D., Soada Zubair, M.D., and non-examining physician Jessica McHugh, M.D. Dkt. 10, pp. 3-9.

In assessing an acceptable medical source – such as a medical doctor – the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the

1 record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.

2 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

    1. Dr. Alto

Plaintiff maintains that the ALJ erred in evaluating the opinion of examining physician Dr. William Alto. Dkt. 10, pp. 4-5.

Dr. Alto evaluated Plaintiff on May 2, 2013 for the Washington State Department of Social and Health Services ("DSHS"). AR 521-25. Dr. Alto assessed Plaintiff as being able to perform sedentary work. AR 523. Dr. Alto also conducted a physical examination of Plaintiff, which revealed a reduced range of motion in her left foot. AR 525.

The ALJ assigned "little weight" to Dr. Alto's opinion, reasoning that Dr. Alto: 1) did not list any specific objective findings to support his conclusion, beyond a brief reference to a prior MRI, 2) relied mostly on Plaintiff's subjective pain complaints, and 3) was not aware of Dr. Zubair's March 2012 consultative examination, in which Dr. Zubair assessed less restrictive exertional limitations. AR 622-23. But, even if the Plaintiff is correct and Dr. Alto's opinion should have been given greater weight, any error would be harmless.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). An error is harmless if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115.

Here, Dr. Alto assessed Plaintiff as being able to perform sedentary work, defined in the pertinent DSHS form as the ability to lift 10 pounds maximum, frequently lift or carry

lightweight articles, and walk or stand only for brief periods. AR 523. The ALJ restricted Plaintiff to performing work at the sedentary exertional level, defined in Social Security regulations as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools" and occasional (defined as occurring from very little up to one-third of the time) walking and standing. AR 618; Social Security Ruling ("SSR") 83-10. Because the limitations assessed by Dr. Alto are already contained in RFC, any error in evaluating his opinion was harmless.

2. Dr. Zubair

Plaintiff contends that the ALJ erred in evaluating the opinion of examining physician Dr. Zubair. Dkt. 10, pp. 5-6.

Dr. Zubair examined Plaintiff on March 30, 2012. AR 472-75; the examination consisted of a clinical interview, a physical examination, and a mental status examination. Dr. Zubair assessed Plaintiff as being able to lift and carry 50 pounds frequently and 25 pounds occasionally and sit for 1 hour at a time, four to six hours per eight-hour day, with intermittent breaks of standing and walking. AR 474. Dr. Zubair opined that Plaintiff could perform all postural and manipulative activities "as long as she had some kind of support such as holding onto a counter or table." AR 475. Dr. Zubair also stated that Plaintiff could not perform her past "strenuous" work, but stated that she could do a "sitting" job. *Id.*

The ALJ assigned "some weight" to Dr. Zubair's opinion. AR 621. The ALJ reasoned that with respect to Plaintiff's lifting and carrying limitations, Dr. Zubair's opinion is less restrictive than the assessed RFC, but credited Plaintiff's subjective pain complaints and the effects of Plaintiff's obesity, diabetes, and degenerative joint disease in restricting Plaintiff to sedentary work. AR 621. The ALJ added that Dr. Zubair's finding that Plaintiff's manual

dexterity was normal was inconsistent with Plaintiff's allegation that she could not hold a glass of water. AR 475, 621. The ALJ also observed that Dr. Zubair's opinion that Plaintiff could perform a sitting job was consistent with a sedentary RFC, and the limitations assessed by Dr. Zubair were not entirely consistent with physical examination results, Plaintiff's travel activities, and the medical record. AR 621.

In its earlier decision, this Court found that the medical record was supportive of Dr. Zubair's assessment, and that Dr. Zubair's examination findings could support her findings in her opinion and assessment. AR 700-01. As such, the ALJ's findings that Dr. Zubair's opinion was inconsistent with the medical record and her own examination results cannot serve as specific, legitimate reasons for discounting her opinion in the present case. *See Stacy v. Colvin,* 825 F.3d 563, 567-68 (9th Cir. 2016) (law of the case doctrine applies in Social Security appeals).

Plaintiff alleges that the ALJ erred in failing to specifically address Dr. Zubair's opinion that Plaintiff could sit for one hour at a time, for a total of four to six hours per eight-hour day with intermittent breaks of standing and walking, and could perform postural and manipulative activities "as long as she had some kind of support." Dkt. 10, p. 6.

The ALJ mentioned these limitations when evaluating Dr. Zubair's opinion, but did not offer specific reasons for not including them in the RFC, instead relying generally on the rationale relied upon in discounting Plaintiff's subjective allegations. AR 618-21. For the reasons discussed below, the ALJ has not provided valid reasons for discounting Plaintiff's subjective allegations, and this rationale cannot serve as a specific, legitimate reason for discounting Dr. Zubair's opinion. *See infra* Section B.

3. Dr. McHugh

1    Plaintiff asserts that the ALJ erred in evaluating the opinion of non-examining physician Dr. McHugh. Dkt. 10, pp. 6-9.

Dr. McHugh evaluated Plaintiff on June 21, 2012 for DSHS. AR 602-03. Dr. McHugh reviewed treatment notes provided by another physician, AR 604-09, and opined that Plaintiff could lift and carry a maximum of two pounds, sit for most of the day, and stand or walk for brief periods. AR 602. Dr. McHugh also opined that Plaintiff would have gross or fine motor skill restrictions, but did not include more specific information about Plaintiff's limitations. *Id.* Dr. McHugh stated that Plaintiff was not scheduled for surgery at the time, and that participation in training and employment activities was appropriate. *Id.*

The ALJ assigned "little weight" to Dr. McHugh's opinion. AR 623. The ALJ reasoned that Dr. McHugh's opinion was inconsistent with: 1) the lack of objective testing or other information to validate these limitations, 2) Plaintiff's ability to take a long, transatlantic flight in 2015, or 3) her statement that that Plaintiff was not scheduled for surgery and could participate in training and employment activities. AR 623.

With respect to the ALJ's first reason for discounting Dr. McHugh's opinion, the ALJ erred in finding that Dr. McHugh's opinion was not supported by objective testing. Dr. McHugh attached to her evaluation a physical examination conducted by Joseph Shamseldin, M.D. on June 21, 2012. AR 604-09. Dr. Shamseldin's examination revealed that Plaintiff had an antalgic pelvic tilt, an antalgic gait, and tenderness and restricted range of motion in her lumbar spine and left foot. AR 604-05. Plaintiff was able to heel walk with pain but was unable to toe walk due to left ankle pain. *Id.*

The ALJ's second reason does not constitute a specific, legitimate reason for rejecting Dr. McHugh's opinion. *See infra* Section B.

With respect to the ALJ's third reason, a finding that a medical opinion contains internal inconsistencies is a specific, legitimate reason for discounting it. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's rejection of internally inconsistent medical opinion). Here, there is an inconsistency between Dr. McHugh's opinion that Plaintiff could participate in employment activities and the assessment of what appear to be disabling exertional limitations.

Because the ALJ has provided a specific, legitimate reason for discounting Dr. McHugh's statement, the ALJ did not err in evaluating this opinion. *See Presley-Carrillo v. Berryhill*, 692 Fed. Appx. 941, 944-45 (9th Cir. 2017) (citing *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (although an ALJ erred on one reason he gave to discount a medical opinion, "this error was harmless because the ALJ gave a reason supported by the record" to discount the opinion).

B. <u>Whether the ALJ erred in evaluating Plaintiff's subjective allegations</u>

In weighing a Plaintiff's testimony, an ALJ must use a two-step process. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014). If the first step is satisfied, and provided there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id.*

In discounting Plaintiff's subjective allegations, the ALJ cited medical records and physical examinations results that the ALJ considered to be inconsistent with Plaintiff's

allegations. AR 619-20. Inconsistency with objective evidence may serve as a clear and convincing reason for discounting plaintiff's testimony. *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). But an ALJ may not reject a claimant's subjective symptom testimony "*solely* because the degree of pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (internal quotation marks omitted, and emphasis added); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain).

In addition, the ALJ cites Plaintiff's activities of daily living as being inconsistent with her allegations concerning her physical impairments. AR 619. The ALJ cited Plaintiff's ability to prepare simple meals, perform household chores and self-care, and noted that Plaintiff and her husband were attempting to have a child, which the ALJ inferred to mean that Plaintiff "deemed herself capable of the emotional and physical full time demands of caring for an infant." *Id.* An ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir.1999).

However, disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), citing *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir.1987) (noting that a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits); *see also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall

disability. One does not need to be 'utterly incapacitated' in order to be disabled."), citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989).

Plaintiff's ability to prepare simple meals, perform household chores, and engage in basic self-care does not constitute a clear and convincing reason for rejecting her testimony. The ALJ questioned Plaintiff in both the 2014 and 2017 hearings about her desire to give birth to a child, and relied on Plaintiff's desire to become pregnant as one of the reasons why the ALJ discounted Plaintiff's credibility. AR 43-45, 619, 634, 656, 675. With respect to Plaintiff's statement that in October of 2013 she was trying to have a child, Plaintiff expressed reservations about the prospect because of the pain stemming from her physical impairments and the side effects of her medication; she also stated that if God gave her a child she would be very happy. AR 44-45, 52.

It would be unfair for the Commissioner or a reviewing court to penalize a person of child-bearing age who applies for Social Security benefits by discrediting the claimant who maintains their request for benefits and decides to have a child while their disability application is pending. A person's ability or desire to become pregnant is completely irrelevant and should not be used by the ALJ to determine credibility (unless the claimant stopped working solely because of the pregnancy and not due to a disabling condition). *See e.g. Tilton v. Colvin,* 184 F. Supp. 3d 135, 146 (M.D. Penn. 2016) (holding that the ALJ is prohibited from considering pregnancy as an indication of credibility unless the claimant stopped working due to a pregnancy rather than due to an impairment, and noting that a claimant's "ability to become pregnant, bear children, and breast feed does not constitute activities of daily living that rise to the level of substantial gainful activity.").

The ALJ also relied on a 2015 airplane trip Plaintiff took to visit her mother in Ethiopia. AR 619. The flight took between 19 and 20 hours. AR 651. Because Plaintiff testified that she

1 had difficulty standing while working, and could not sit for more than one hour, the ALJ
2 believed that the long flight was inconsistent with Plaintiff's testimony. AR 647. Plaintiff
3 testified that during travel she tried to stand up and walk around, but she still had swelling and
4 pain in her leg after the plane landed in Ethiopia. AR 651-52. Plaintiff testified that she was
5 unable to walk after arriving in Ethiopia, and required a wheelchair to get through the airport.
6 AR 652. The ALJ reasoned that Plaintiff was able to walk around the airport despite her
7 complaints, and stated that the time Plaintiff spent out of her seat during the flight would not be
8 "at will", but was instead at the discretion of the flight crew. AR 619.

First, Commissioner concedes that the ALJ erred when she referred to Plaintiff's ability to walk around the airport. Dkt. 11, p. 5. Second, the ALJ's statement that Plaintiff could not have walked around the airplane "at will" without permission from the flight crew is based on speculative inferences and assumptions, rather than facts to contradict Plaintiff's testimony about what actually occurred during the flight.

The ALJ also cited Plaintiff's lack of compliance with her treatment regimen as a reason for discounting her allegations. AR 620. SSR 16-3p provides that if an individual fails to follow prescribed treatment that might improve symptoms, an ALJ may find that the alleged intensity of an individual's symptoms is inconsistent with the record. However, an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *See also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[A]n unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment . . . can cast doubt on the sincerity of the claimant's pain testimony.").

In arguing that Plaintiff was non-compliant with treatment, the ALJ cites a missed appointment from February 2010. AR 452. The ALJ also cites treatment records from June 2012 indicating that Plaintiff had recently been diagnosed with diabetes, and had not yet gone to ophthalmology, podiatry, and diabetes education appointments despite referrals. AR 488-89. The ALJ also cited treatment records from January 2013, in which Plaintiff stated that she was taking metformin for her diabetes, but was not doing blood sugar testing at home. AR 537.

The isolated treatment notes cited by the ALJ are insufficient to establish a pattern of non-compliance. Even if such a pattern could be inferred from the evidence cited, the ALJ has not considered other reasons why Plaintiff might not have followed a prescribed course of treatment. *See* SSR 16-3p (the Social Security Administration will not find an individual's symptoms inconsistent with the evidence in the record because the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints "without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.").

The record shows that Plaintiff is an Ethiopian refugee who came to the United States in 2005. AR 351. Plaintiff does not speak English, and has a sixth grade education. AR 40-41. The ALJ's expectation that Plaintiff would be able to precisely and consistently follow physician instructions concerning a complex diabetic treatment regimen cannot serve as a clear and convincing reason for rejecting Plaintiff's allegations concerning her physical impairments.

    C. <u>Whether the ALJ erred in assessing Plaintiff's RFC</u>

        1. <u>Ability to use hands frequently</u>

1    Plaintiff first argues that the medical record establish that she could not utilize her hands

2    frequently, and that such a limitation would preclude her from performing jobs that required

3    frequent manipulative activities. Dkt. 10, p. 12.

4    In assessing the RFC, the ALJ found that Plaintiff could frequently handle, finger, and

5    feel. AR 618. At step five of the sequential evaluation, the ALJ found that Plaintiff could

6    perform the sedentary, unskilled jobs of touch up screener, table worker, and taper. AR 625. All

7    these jobs require frequent handling and fingering, but none require frequent feeling. *See* U.S.

8    Dep't of Labor, Selected Characteristics of Occupations ("SCO") Defined in the Revised

9    Dictionary of Occupational Titles, Part A (1993) at 56, 203; Appendix C.

10   The only evidence concerning Plaintiff's manipulative limitations are Dr. Alto's

11   statement that Plaintiff would have a moderate limitation in handling due to eczema and Dr.

12   Zubair's assessment that Plaintiff could perform a range of manipulative and postural activities,

13   including handling, if she had "some kind of support." AR 475, 522. There is not an inherent

14   inconsistency between Dr. Alto's statement that Plaintiff would have a moderate limitation in

15   handling and the RFC restriction to frequent handling. *See* SSR 83-10 ("frequent" means

16   occurring from one-third to two-thirds of the time). Dr. Zubair found that Plaintiff's manual

17   dexterity was normal, and her opinion reflects Plaintiff's limitations related to her foot

18   impairment, indicating that she could perform handling activities if she could support herself by

19   holding on to a counter, table, or other similar object. AR 475.

    2. <u>Whether a significant number of jobs exist that Plaintiff could perform</u>

21   Plaintiff next argues that there were not a significant number of jobs she could perform at

22   step five of the sequential evaluation. Dkt. 10, pp. 12-13. Plaintiff argues that taken together, the

23   three jobs cited by the ALJ at step five only provide 750 jobs in the local economy. AR 625, 659.

The Ninth Circuit has held that in assessing whether the Commissioner has met the burden of establishing that there are a significant number of jobs Plaintiff could perform at step five, the Court may look to "either regional jobs (the region where a claimant resides) or in several regions of the country (national jobs)." *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). (emphasis in original) (citing 42 U.S.C. § 423(d)(2)(A)). If "either of the two numbers [are] 'significant,' then [the court] must uphold the ALJ's decision." *Id*. at 390 (emphasis in original).

The Ninth Circuit has "never set out a bright line rule" as to what is a "significant number." *Beltran*, 700 F.3d at 389. The Ninth Circuit has held that 25,000 presented a "close call", but found that this did constitute a significant number of jobs. *Gutierrez v. Comm. of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014). Here, the vocational expert ("VE") testified that given Plaintiff's RFC, there would be 30,000 touch up screener jobs available in the national economy, 25,000 table worker jobs, and 10,000 taper jobs. AR 659. If Plaintiff did not have any functional limitations beyond those included in the RFC, there would have been a significant number of jobs Plaintiff could perform at step five. However, because the ALJ erred in evaluating the opinion of Dr. Zubair and Plaintiff's symptom testimony, the RFC should have included additional limitations. *See infra* Section D.

D. <u>Whether this case should be remanded for an award of benefits</u>

Plaintiff asks the Court to remand this case for an award of benefits. Dkt. 10, p. 18.

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for

further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. 80 F.3d 1041, 1045 (9th Cir. 2017).

Here, the ALJ erred in evaluating the opinions Dr. Zubair, as well as Plaintiff's subjective allegations.

Thus, the question in this case is whether Plaintiff would be disabled if the opinion of Dr. Zubair and Plaintiff's subjective allegations were credited as true. With respect to Dr. Zubair's opinion, the relevant limitations are Dr. Zubair's assessment that Plaintiff could: 1) sit for one hour at a time, for between four and six hours in an eight-hour day, with intermittent breaks of standing and walking, and 2) could perform all postural and manipulative activities "as long as she had some kind of support such as holding onto a counter or table." AR 475.

During the hearing, the VE was asked whether a person who could only sit for one hour at a time and required a sit/stand option could still perform the jobs cited by the VE at step five. AR 662-63. The VE testified if a person had to go from a seated position to a standing position

"for any length of time", such a limitation would eliminate the jobs cited by the VE at step five. AR 663.

Dr. Zubair's opinion is clear that Plaintiff would need to change positions every hour, and could not sit for an entire eight-hour day. Crediting Dr. Zubair's opinion as true, and considering the strength of Plaintiff's credibility, there were not a significant number of jobs Plaintiff could perform at step five of the sequential evaluation. Accordingly, remand for an award of benefits is the appropriate remedy.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ erred when she determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for an award of benefits. The Court reverses the decision of the ALJ and remands this case to the Commissioner for an award of benefits.

Dated this 20th day of September, 2019.

Theresa L. Fricke
United States Magistrate Judge